John W. YOUNG, Commissioner of Labor, etc., Appellant,

v.

Della HOLBROOK et al., Appellees.

Court of Appeals of Kentucky.

Oct. 29, 1971.

Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, for appellant.

Gemma M. Hardin, Louisville, for Special Fund.

Richard Cooper, Reeves, Barret, Cooper & Ward, Hazard, for Holbrook.

Harry C. Campbell, Pikeville, for Beth-Elkhorn Corp.

PALMORE, Judge.

On August 11, 1969, the Workmen's Compensation Board rendered an opinion and award finding that on November 27, 1967, Arvil Holbrook had become totally and permanently disabled from the occupational disease of silicosis incurred during the course of many years of service as a motorman in the coal mines. Pursuant to an award he drew maximum weekly compensation from the date of disability until February 14, 1970, on which date he died.

Holbrook's widow instituted this proceeding under KRS 342.111 for the remaining portion of the award which would have been payable to her husband had he lived out the full compensable period of 425 weeks. At the present time, by virtue of a 1970 amendment to KRS 342.111 (c. 7, Acts of 1970, eff. June 18, 1970), the employe's dependents are entitled to collect the balance of the award regardless of the cause of his death, but as the law stood on February 14, 1970, the date of Holbrook's death, the dependents could have such recovery only if the death occurred "as a result of" the occupational disease for which the compensation was being paid. Hence it was incumbent upon Mrs. Holbrook in this proceeding to establish that her husband's death was a result of silicosis.

The board found that Mrs. Holbrook had not sustained her burden of proof, and denied the claim. The circuit court reversed. We agree with the circuit court.

Only two witnesses testified, Mrs. Holbrook and Dr. Richard P. O'Neill, of Lexington, who is an internist specializing in respiratory physiology and industrial lung disease and teaches that subject as a member of the faculty at the University of Kentucky Medical School.

Mrs. Holbrook testified that her husband died at home. He had worked in the mines, principally as a motorman, for 45 years. From the time he was forced to quit work in November of 1967 until his death his condition with respect to difficulty in

breathing steadily grew worse. About two days before his death he appeared to be coming down with a cold or flu, complained of aching and chilling, and was coughing and "smothering." About 40 minutes before he passed away he was gasping and unable to get his breath, and said he was smothering. He was not attended by a doctor.

Dr. O'Neill had thoroughly examined Holbrook on November 21, 1968, and appeared as a witness for him in his then pending proceeding for compensation. In testifying with regard to the probable cause or causes of Holbrook's death he relied upon the information he had gained through that examination and upon Mrs. Holbrook's testimony given in this proceeding. Mrs. Holbrook's description of the symptoms observed by her during the two days preceding her husband's death was paraphrased in a hypothetical question, but since there was no objection to Dr. O'Neill's use of and reliance upon her testimony it is unnecessary for us to question or consider whether and the extent to which it was permissible for him to consider this type of case history.

The diagnoses at which Dr. O'Neill arrived on the basis of the 1968 examination were:

"1. Chronic obstructive airway disease —mild to moderate.

2. Chronic bronchitis.

3. Coal worker's pneumoconiosis, simple, stage 1.

4. Hypertension of undetermined etiology.

5. Probable coronary insufficiency and angina pectoris.

6. Pain in right upper quadrant of undetermined etiology. Liver, kidney and GI problems should be ruled out."

His opinions with respect to the cause of death are best illustrated by the following excerpts from his testimony:

Q. "Dr. O'Neill, what effect, if any would the occupational disease of silicosis have upon Arvil Holbrook's heart by way of any additional stress?"

A. "There would be two major ones. One would be the effect per se of his lung disease, that is chronic bronchitis, obstructive airway disease and pneumoconiosis, causing co-pulmonale. At the time of seeing him I saw no evidence for that. However, at the time of examination I was concerned that this man probably had angina pectoris with associated coronary insufficiency. Under the circumstances of his lung disease, as proven here, he had an abnormal arterial blood gas study, which would further interfere with his myocardial oxygenation."

Q. "Now is this related, Dr. O'Neill, to the occupational disease of silicosis that you have heretofore diagnosed?"

A. "Yes, sir, I would relate that to his bronchitis and to his occupational pneumoconiosis."

Q. "Assume, Dr. O'Neill that he died from the respiratory disease, do you have an opinion as to the role that the occupational disease had upon the infection that was superimposed upon this disease?"

A. "Yes, sir. I think it's reasonably well established medically that any underlying lung abnormality makes the ability of a patient to withstand an acute infectious onslaught much more dangerous to the individual."

Q. "Now, Dr. O'Neill, assuming that he may have died from a heart attack, would you explain to the Board what effect, if any, his respiratory disease or occupational disease had upon, or by way of contribution, to, his death from any heart attack he may have suffered, if in fact he did?"

A. "Well, at the time of seeing him I, as I have said, was of the opinion that

this man had chronic obstructive airway disease, chronic bronchitis and coal worker's pneumoconiosis in addition to probable coronary insufficiency. These conditions, per se, would cause him to have a decreased arterial oxygenation which would further impair his myocardial oxygenation, due to his already, probably, established coronary insufficiency. Further, an acute respiratory insult on top of these respiratory conditions could decrease his arterial oxygen saturation such that his coronary insufficiency became very grievous and might have caused his demise."

Q. "Dr. O'Neill, what is your best medical opinion, based upon the facts that you have assumed to be true that were related in the evidence of Mrs. Holbrook, who observed her husband prior to death, and the facts that you learned first-hand from your own examination here at the University of Kentucky Medical School, as to the cause of Arvil Holbrook's death and its relation to his occupational disease?"

A. "I can't, of course, be sure of what caused this man's death, but that a reasonable medical guess I would be inclined to believe that this man developed a respiratory infection due to Asian influenza, with acute bronchitis and, possibly, acute pneumonitis which, coupled with his previous respiratory condition and his previous described cardiac condition, were both in combination sufficient to cause his death."

On cross-examination:

Q. "Is it a reasonable medical theory in your opinion that a coronary occlusion can be caused by silicosis?"

A. "Per se, no sir. Per se, no. I would think in the usual circumstance that there would have to be some coronary insufficiency due to coronary atherosclerosis, but a bad pulmonary condition could so decrease the arterial oxygenation that the critical coronary oxygenation would be so reduced to bring about myocardial infarction and death."

\*   \*   \*   \*   \*   \*

Q. "Doctor, since you did not personally follow this patient subsequent to your examination of November, 1968, what, if anything, can you swear was the actual cause of this man's death?"

A. "That would be swear with medical certainty, sir?"

\*   \*   \*   \*   \*   \*

A. "I wouldn't be able to do this, sir. I can just try to use my medical training to the best of my ability to put certain facts together and to try to come up with a reasonable conclusion. I don't think anyone could swear as to what exactly this man died of without an autopsy, and even then there could be doubts."

Q. "You would be in a much better position to reach a conclusion as to the cause of death if you had been his regular attending physician, would you not?"

A. "I would hope so, sir, yes."

Q. "And in the situation that you find yourself you have to theorize on the basis of your medical knowledge, plus these so-called symptoms which the wife related?"

A. "Yes, I think that's reasonable."

Q. "And there's no certainty in your mind as to the accuracy of her report, is there?"

A. "There's no certainty, sir, I just have to take what the lady said under questioning as being reasonably accurate, at least in her mind."

For what it may be worth, a death certificate executed by the Letcher County Coroner listed the cause of death as coronary occlusion as a consequence of pulmonary insufficiency and silicasia (sic).

In its order denying the claim the board expressed the opinion that Dr. O'Neill's testimony was "speculative" and that Mrs. Holbrook had not met the burden of establishing that the death was attributable to silicosis.

In the brief for the appellant Special Fund much emphasis is laid on the presence of diseases and conditions other than silicosis, and the argument is that to choose silicosis as a cause of death is mere conjecture. Bearing in mind, however, that these same conditions existed in 1968 and were in the record through the testimony of this same witness, there would appear to be more than a little inconsistency between the board's having then found nevertheless that silicosis was the cause of his total disability and its now being unable, because of these very same concurring conditions, to find that it was the cause of his death.

This is not, as counsel for the employer argues, a case in which there is a conflict in the evidence and the board's choice must stand. There is no conflict whatever in the evidence. It is simply a question of whether in the face of the evidence it was clearly unreasonable for the board to reject the claim. We think it was.

Perhaps it was the opinion of the board that under KRS 342.111 as it existed before the 1970 amendment the disease for which compensation is being paid must be *the sole cause* of death in order for the dependents to recover. That question is not mentioned in the record or in the briefs. In any event, we are not advised of any holding to that effect by this court. It seems to us that there can be no doubt, under this evidence, that the work-connected condition of Holbrook's lungs was a probable causative factor in his death, and if so, his dependent widow is entitled to an award for the remaining payments he would have received had he lived.

The judgment is affirmed.

All concur.